```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
380544 CANADA, INC., WAYNE SIM,      :
and SALVADOR CLAVÉ,                  :
                  Plaintiffs,        :
                                     :
     -against-                       :     No. 07 Civ. 1204 (JFK)
                                     :     Opinion and Order
ASPEN TECHNOLOGY, INC., DAVID L.     :
MCQUILLIN, LAWRENCE B. EVANS, and    :
LISA ZAPPALA,                        :
                  Defendants.        :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-14-11

APPEARANCES:

    For Plaintiffs:
        Eric J. Grannis
        LAW OFFICES OF ERIC J. GRANNIS

    For Defendant Aspen Technology:
        Kurt Wm. Hemr
        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

    For Defendant David L. McQuillin:
        Bruce E. Falby
        DLA PIPER LLP

    For Defendant Lawrence B. Evans:
        Nicholas C. Theodorou
        FOLEY HOAG LLP

    For Defendant Lisa Zappala:
        John J. Falvey, Jr.
        GOODWIN PROCTER LLP

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is 380544 Canada, Inc., Wayne Sim, and Salvatore Clavé's (collectively, the "Plaintiffs") motion to amend the complaint to include additional facts amplifying federal securities fraud, common law fraud, and breach of contract claims against corporate Defendant Aspen Technology,

Inc. ("Aspen Tech") and three former high-ranking officers of Aspen Tech, David McQuillin, Lawrence Evans, and Lisa Zappala (collectively, the "Individual Defendants").  Plaintiffs also seek to assert a new claim against all Defendants under the Massachusetts Uniform Securities Act.  For the reasons that follow, the motion is denied.

## I.   Background

Wayne Sim and Salvador Clavé were respectively the Chief Executive Officer and Chief Operating Officer of a process engineering software company called Hyprotech.  In 2001, Defendant Aspen Tech began negotiations to acquire Hyprotech; in order to finance this acquisition, Aspen Tech recruited investors, including Sim and Clavé, to purchase approximately $50 million of stock via a private placement.  On May 9, 2002, Sim and Clavé entered into a private placement Securities Purchase Agreement (the "SPA") for the purchase of approximately $6.8 million of Aspen Tech shares.  After the execution of the SPA, both Sim and Clavé took sales management positions at Aspen Tech – Sim served as the Senior Vice President of Sales, and Clavé served as the Senior Vice President of Sales Operations.  About three years after Sim and Clavé's stock purchase, Aspen Tech revealed that it had improperly accounted for revenue from numerous software licensing and service agreements and, as a

result, the company restated its financials for fiscal years 1999 through 2004.

Plaintiffs filed their initial complaint on February 15, 2007 asserting claims for, among other things, violation of Section 10(b) and Section 20(a) of the Securities and Exchange Act of 1934 and common law fraud.  Plaintiffs premised these claims on allegedly false statements regarding the company's revenues and accounting practices that Aspen Tech and the Individual Defendants made in (1) private meetings with the Plaintiffs, (2) the SPA itself, (3) press releases, and (4) SEC filings that reported and commented on Aspen Tech's financial results in the thirteen fiscal quarters preceding the execution of the SPA.  Plaintiffs contend that but for these false representations, they would not have entered into the SPA.

Defendant Aspen Tech answered the complaint on April 17, 2007.  At the initial conference on May 14, 2007, the Individual Defendants informed the Court of their intent to file pre-answer motions to dismiss the complaint and submitted a stipulated briefing schedule for approval.  These motions to dismiss triggered a discovery stay under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B).  In an Opinion and Order dated March 18, 2008, the Court granted the Individual Defendants' motions to dismiss in part, and directed Plaintiffs "to advise the Court by April 11,

2008, as to whether they intend to file an amended complaint. If so, the parties are directed to meet and confer regarding a schedule for the filing of an amended complaint and subsequent motions to dismiss, and submit a stipulated [briefing] schedule." 380544 Canada, Inc. v. Aspen Tech., Inc., 544 F. Supp. 2d 199, 236 (S.D.N.Y. 2008).  In accordance with the terms of a Stipulation and Order dated April 30, 2008, Plaintiffs filed an amended complaint on May 2, 2008.  See Stipulation and Order, 380544 Canada, Inc. v. Aspen Technology, Inc., No. 07 Civ. 1204 (S.D.N.Y. Apr. 30, 2008), ECF No. 77.  Only Defendant Evans moved to dismiss the amended complaint.  In an Opinion and Order dated May 5, 2009, the Court again granted the motion to dismiss in part, and dismissed some claims against Evans with prejudice.  See 380544 Canada, Inc. v. Aspen Tech., Inc., 633 F. Supp. 2d 15, 37 (S.D.N.Y. 2009) ("The Court's opinion dismissing the initial complaint notified Plaintiffs that they failed to plead certain claims with the requisite particularity and that they failed to raise a strong inference of Evans's scienter. Despite this notice, in their amended complaint, Plaintiffs again fail to plead certain claims with the requisite particularity and again fail to raise a strong inference of Evans's scienter . . . .  This demonstrates that permitting Plaintiffs to replead would be futile.").

4

At this point the PSLRA stay lifted, and on June 22, 2009, the Court entered a stipulated scheduling order for discovery. See Stipulation, 380544 Canada, Inc. v. Aspen Technology, Inc., No. 07 Civ. 1204 (S.D.N.Y. June 22, 2009), ECF No. 99.  The discovery deadline was subsequently extended three times, with fact discovery ultimately closing on September 1, 2010.  See Order, 380544 Canada, Inc. v. Aspen Technology, Inc., No. 07 Civ. 1204 (S.D.N.Y. June 8, 2010), ECF No. 119.  On September 13, 2010, Plaintiffs moved for leave to file a second amended complaint.  Plaintiffs seek to add allegations concerning representations made during private meetings they attended with Aspen Tech executives in 2001 and 2002.  Specifically, Plaintiffs now claim that Aspen Tech represented that revenues in its Aspen Engineering Suite ("AES") division had grown steadily through 2001 and were projected to continue to grow by 20% in 2002, but failed to disclose that the growth in revenue was attributable to the acquisition of a company called ICARUS and subsequent accounting manipulation instead of a true increase in sales.  (Proposed Second Am. Compl. ¶¶ 34-50). Plaintiffs also propose to add a Massachusetts Uniform Securities Act claim premised on previously pleaded facts.  (Id. ¶¶ 349-65).

5

**II.     Discussion**

**A.  Legal Standards**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a party has amended a pleading once as of right, future amendments may only be permitted on consent or by leave of court. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court retains the discretion to deny leave "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998) (trial court's discretion to deny motion to amend is "broad"). Delay alone, without an attendant showing of bad faith or prejudice, may be an insufficient basis for denial of a motion to amend. See Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008). However, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983) (quotation omitted). Prejudice may result where proposed amendments would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the

resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (citing Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); see AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725-26 (2d Cir. 2010).

However, when a party proposes to amend a pleading after the deadline for amendment in a scheduling order, the court must balance Rule 15(a)'s more lenient standard for amendment of pleadings against Rule 16(b)(4)'s mandate that the scheduling order "may be modified only for good cause." See Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003); Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."). This balancing enables the Court to ensure both that its scheduling orders have force and that "at some point both the parties and the pleadings will be fixed and the case will proceed." Lincoln v. Potter, 418 F. Supp. 2d 443, 454 (S.D.N.Y. 2006).

"Good cause" to justify untimely amendment of pleadings "depends on the diligence of the moving party." Parker, 204 F.3d at 340. Courts have found good cause to excuse a movant's

7

late amendment where new information came to light at such a time that the movant could not reasonably have complied with the scheduling order. See, e.g., Estate of Ratcliffe v. Pradera Realty Co., No. 05 Civ. 10272, 2007 WL 3084977, at *4 (S.D.N.Y. Oct. 19, 2007). On the other hand, where the substance of the proposed amendment was known to the movant prior to the deadline for amending pleadings, but the movant nevertheless failed to act, courts have denied leave to amend under Rule 16. See Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland, No. 09 Civ. 4622, 2010 WL 4968247, at *4 (S.D.N.Y. Nov. 24, 2010); Oppenheimer & Co. Inc. v. Metal Mgmt., Inc., No. 08 Civ. 3697, 2009 WL 2432729, at *3-4 (S.D.N.Y. July 31, 2009); Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. 2003) (holding that "defendants' failure to comply with the Court's Scheduling Order resulted from a lack of diligence, because the substance of the defendants' 'new' claim was known when the defendants filed their original amended answer and added their counterclaim").

**B.   Rule 16(b)**

This Court's general practice is to enter a case management order during an initial conference. However, at the initial conference in this case, the Individual Defendants informed the Court of the forthcoming pre-answer motions to dismiss. Since discovery was immediately stayed under the PSLRA, entry of a case

management order setting deadlines for amendment and discovery proved impractical.  Instead, the Court first allowed motion practice to proceed in order to define the plausibility of Plaintiffs' claims, and subsequently entered stipulated scheduling orders dated April 30, 2008 and June 22, 2009 to manage the timing of amendments and discovery.  The Court's view, as expressed to counsel in the pre-motion conference, is that those stipulations act as the Rule 16 scheduling order.  Plaintiffs contend that the April 30, 2008 order only governs the timing of "an" amendment and does not impose a final deadline for "any" amended pleadings.  However, the April 30, 2008 order, particularly when considered in conjunction with the May 5, 2009 opinion denying Plaintiffs further leave to replead, "explicitly limited the plaintiffs' ability to amend their complaint" - the prerequisite for applying Rule 16.  In re Wireless Tel. Servs. Antitrust Litig., No. 02 Civ. 2637, 2004 WL 2244502, at *5 & n.6 (S.D.N.Y. Oct. 6, 2004) (invoking Rule 16 where scheduling orders did not specify a deadline for amendment of pleadings but "[t]he Orders themselves, and the conferences which preceded them, left no doubt that the Amended Complaint was the final statement of the plaintiffs' claims in this consolidated action"); cf. Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02 Civ. 1230, 2006 WL 2242596, at *2 (S.D.N.Y. Aug. 3, 2006) (applying Rule 16 where scheduling order did not set a particular date for amending

pleadings but the court's written opinion granting motion to dismiss limited the number of times plaintiff could replead deficient claims).

Thus, Plaintiffs must demonstrate good cause to file a second amended complaint.  The Court notes that the motion to amend was filed more than eight years after the alleged misrepresentations were made, more than three and a half years after the lawsuit was initiated, two years after the April 30, 2008 scheduling order was entered, and shortly after the close of fact discovery.  Yet Plaintiffs have offered no compelling or even genuine explanation for the delay.  Plaintiffs claim they have long suspected that Aspen Tech's 2001 and 2002 assurances regarding AES revenue growth were misleading, but could not substantiate those beliefs until they received and reviewed discovery, which occurred after May 2, 2008.  (Pl. Mem. at 3, 7). But this is not the typical securities fraud case brought by passive investors who purchased securities on the open market. Plaintiffs personally attended meetings with Aspen Tech executives and discussed Aspen Tech's AES revenues; an Aspen Tech employee emailed a copy of an allegedly misleading PowerPoint presentation to Sim on August 9, 2001.  (Proposed Second Am. Compl. ¶ 34).  Both Plaintiffs went on to hold senior sales management positions at Aspen Tech following their investment in the company.  As two of the highest ranking sales professionals

10

at Aspen Tech, Plaintiffs were privy to company-wide sales information and were in a position to verify the accuracy of AES revenue growth reported in the PowerPoint and other presentations, as well as to determine if sales forecasts were on target, their first day on the job in 2002.  Indeed, counsel confirms that "[w]hen Plaintiffs joined Aspen [in 2002], Aspen's AES division did not perform as had been projected and consistent with its historical growth.  Plaintiffs therefore believed that the representations concerning AES revenues that had been made to them [in pre-SPA meetings] were false." (Pl. Mem. at 3).  The discovery provided by their former employer did not unearth misrepresentations previously unknown to Plaintiffs.  The documents may have buttressed Plaintiffs' allegations of scienter, but they have had enough information to plead a securities fraud claim premised on pre-SPA misrepresentations since 2002, and twice attempted to make such a claim, long before discovery began.  The Court is unconvinced that Plaintiffs could not have included the substance of the proposed allegations prior to the May 2, 2008 deadline for amendment. See Oppenheimer, 2009 WL 2432729, at *3 (finding no good cause to amend despite the fact that discovery was ongoing and prejudice to the opposing party would be minimal where "the documents more recently produced . . . may further have underscored the potential viability of [movant's] waiver argument, [but] the issue was not

11

new"); Trezza v. NRG Energy, Inc., No. 06 Civ. 11509, 2008 WL 540094, at *6 (S.D.N.Y. Feb. 28, 2008) (denying leave to amend under Rule 16 where "nothing in [plaintiff's] motion papers or in any of his other submissions to the Court suggests that he was unaware of the facts necessary to amend his pleading until after the deadline had passed").

The same is true of the Massachusetts Uniform Securities Act claim. The availability of discovery had nothing to do with the belated addition of this claim, as counsel frankly acknowledges that "[t]o be sure, Plaintiffs' attorneys could have asserted this claim earlier had they thought to do so." (Pl. Reply Mem. at 24). The facts underlying the proposed Massachusetts statutory claim mirror those pleaded in support of the common law fraud claim, which Plaintiffs previously believed to be governed by New York law. See Aspen Tech., 544 F. Supp. 2d at 216; Compl. ¶ 1; Am. Compl. ¶ 1 (asserting claims for "violations of federal statutory and New York common law"). Whatever additional research led counsel to realize the potential for relief under Massachusetts law, that work could have taken place before the initial complaint was filed. Although the Court appreciates counsel's candor, attorney oversight is no excuse for late amendment. See Davidowitz v. Patridge, No. 08 Civ. 6962, 2010 WL 1779279, at *4 (S.D.N.Y. Apr. 23, 2010); Yurman Design Inc. v. Chaindom Enters., Inc.,

No. 99 Civ. 9307, 2001 WL 725291, at *2 (S.D.N.Y. June 27, 2001) (holding that "the failure of an attorney to recognize a potential cause of action is not a sufficient justification for granting leave to amend a complaint" under more stringent Rule 15).  Plaintiffs having failed to demonstrate good cause for the more than three year delay in pleading pre-SPA misrepresentations and the Massachusetts statutory claim, the motion to amend under Rule 16 is denied.

### C.   Rule 15(a)

The Court reaches the same result under Rule 15.  "The burden to explain a delay is on the party that seeks leave to amend," MacDraw, Inc. v. The CIT Group Equip. Fin., Inc., 157 F.3d 956, 962 (2d Cir. 1998), a burden, as discussed above, that Plaintiffs have barely attempted to meet.  Discovery has closed.  Plaintiffs urge that the proposed amendments will require little to no additional discovery, an argument that is belied by their own request to the Magistrate Judge for discovery on issues raised in the Proposed Second Amended Complaint.  See Order, 380544 Canada, Inc. v. Aspen Technology, Inc., No. 07 Civ. 1204 (S.D.N.Y. June 8, 2010), ECF No. 119.  Even if Plaintiffs believe they do not need extensive discovery, in order to defend against the Massachusetts statutory claim alone Defendants state that they would require depositions of additional fact witnesses who could testify to the care exercised by defendants, document

13

production, and expert testimony on the applicable standard of care.  As the Proposed Second Amended Complaint raises a new legal theory of liability, the Court does not see how the parties could move forward on the amended claims without reopening discovery, re-deposing any witnesses that have previously given testimony, and securing additional witnesses.  Should any of the Defendants seek to move to dismiss the amended claims – a likely scenario given the procedural history of this case - that additional discovery would be stayed under the PSLRA.  The Court finds that further amendment would impose on Defendants the burden of additional discovery and would significantly delay proceedings which have already consumed four and a half years, thereby prejudicing Defendants.  Considering the fact that Plaintiffs have offered no plausible explanation for the undue delay in seeking to amend the complaint to add facts and a statutory claim that were available even before the initial complaint was filed, the prejudice to Defendants occasioned by further amendment warrants denial of the motion to amend.

Moreover, with respect to the Individual Defendants and pre-SPA misrepresentations, the Court previously held, and again finds, that any further amendment would be futile.  "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."

14

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). In other words, a proposed amendment is futile where it fails to state a claim that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading requirement on claims of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To state a claim with the required particularity, a complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Stevelman v. Alias Research Inc., 174 F.3d 79, 84 (2d Cir. 1999) (internal quotation marks omitted). "[I]ndiscriminate defendant 'clumping' does not adhere to the particularity standards of Fed. R. Civ. P. 9(b) and the PSLRA." Dresner v. Utility.com, Inc., 371 F. Supp. 2d 476, 493-94 (S.D.N.Y. 2005).

Fraud claims against the Individual Defendants premised on pre-SPA statements have twice been dismissed, not for failure to allege scienter (the apparent aim of the ICARUS allegations), but for vagueness and failure to identify the speaker of each allegedly fraudulent statements as required by Rule 9(b). See

15

Aspen Tech., 633 F. Supp. 2d at 28 (dismissing claims premised on pre-SPA statements against Defendant Evans with prejudice because Plaintiff impermissibly "clumped" the Individual Defendants instead of identifying the speaker); Aspen Tech., 544 F. Supp. 2d at 218 ("Because the Complaint merely alleges, without any specificity, that the Individual Defendants, acting as a unit, made false statements during several meetings leading up to the SPA, Plaintiffs have failed adequately to attribute statements made during those meetings to any of the Individual Defendants.").

Despite the fact that Plaintiffs personally attended the pre-SPA meetings and should be able to pinpoint who gave the allegedly misleading presentations, the proposed amendments yet again fall short of the particularity requirement of Rule 9(b). The Proposed Second Amended Complaint does not allege that Defendant Zappala attended any of the pre-SPA meetings or made any representations whatsoever to Plaintiffs prior to the execution of the SPA.  Plaintiffs' counsel conceded at oral argument that Defendant Zappala could have no liability for pre-SPA misstatements, making any amendment as to Zappala futile. (Sept. 22, 2010 Oral Arg. Tr. at 29:7-12).  With respect to Defendant McQullin, Plaintiffs wish to add claims that in an April 8, 2002 meeting "McQuillin and Evans met Sim in Boston and misrepresented the performance of Aspen" and in a May 2, 2002

16

meeting "[an Aspen Tech employee not named as a defendant] and McQuillin met with Sim in Boston and assured Sim that Aspen's revenues were doing well and that the company was healthy," despite the fact that McQuillin purportedly orchestrated the scheme to acquire ICARUS and knew that Aspen Tech's revenues were inflated. (Proposed Second Am. Compl. ¶¶ 41, 47-48). The proposed amendments with respect to McQuillin suffer from the same defects as the previous iterations of the complaint – they are "too vague to give . . . fair notice of the factual basis for Plaintiffs' claims," and they fail "to link each individual defendant to a specific fraudulent statement in any meaningful way." Aspen Tech., 633 F. Supp. 2d at 28 (rejecting nearly identical allegation that "McQuillin and Evans confirmed again the misrepresentations that McQuillin made at the March 14 meeting"). Thus, the proposed amendments as to McQuillin would fall under Rule 9(b). Finally, with respect to Defendant Evans, the Court dismissed claims premised on pre-SPA meetings with prejudice. See id. at 37. Plaintiffs contend that their failure to include allegations regarding an August 29, 2001 meeting attended by Evans and Plaintiffs in either of the prior complaints exempts those allegations from the ruling of dismissal with prejudice. There can be no doubt that the Court granted Plaintiffs leave to file an amended complaint to allow them to add the precise allegations now at issue. Plaintiffs

17

cannot now use deficiencies in their own pleadings as a get out of jail free card.  The May 5, 2009 opinion dismissed with prejudice any and all fraud claims against Defendant Evans based on misrepresentations in pre-SPA meetings; thus, the proposed amendments as to Evans would be futile.

The corporate Defendant has made numerous additional arguments as to why each of the proposed amendments would be futile.  Aspen Tech's opposition to the motion to amend raises a host of issues - choice of law in particular - that should have been brought in a motion to dismiss the initial or amended complaint.  Aspen Tech has chosen to answer both the initial and amended complaints, and the Court will not allow it to make a backdoor motion to dismiss – after answering and completing discovery - under the guise of Rule 15.  The Court also declines to rule on arguments that will have law of the case implications until they are more fully briefed in the inevitable summary judgment motion to come.  The Court's concern with this motion is and always has been Plaintiffs' delay, and that is the primary basis for denial.

### III. Conclusion

Plaintiffs' motion to amend the complaint [Docket No. 123] is denied. The parties are directed to appear for a status conference on October 19, 2011 at 10:45 a.m. in Courtroom 20-C.

**SO ORDERED.**

Dated:    New York, New York
         September 14, 2011

_____
John F. Keenan
United States District Judge